2014 IL App (1st) 132264

SECOND DIVISION
September 15, 2015

No. 1-13-2264

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 25331 |
| | ) | |
| ALBERTO COLIN, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion. Justices Neville and Simon concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant Alberto Colin pleaded guilty to first degree murder and was sentenced to 53 years' imprisonment. On appeal, defendant contends that because the prosecutor and defense counsel failed to fully inform the trial court of all the material terms of the plea agreement, in violation of Illinois Supreme Court Rule 402(b) (eff. July 1, 1997), the trial court could not confirm the terms of the agreement, determine the voluntariness of the plea, and properly exercise its discretion in deciding whether to accept the plea. For the reasons that follow, we affirm.

¶ 2       Defendant, his brother David Colin, and Fernando Ojeda were charged with the 2006 first degree murder of Helen Coronado and several other related felony offenses pertaining to other victims. While defendant's case was pending, he was charged twice with possession of contraband in a penal institution in case No. 09 CR 8094 and case No. 09 CR 13350.

¶ 3       On April 20, 2010, the prosecutor informed the trial court that the parties had reached a plea agreement. The prosecutor stated that in exchange for pleading guilty, defendant would receive 53 years' imprisonment and the State would nolle pros the remaining counts, as well as the two separate charges of possession of contraband in a penal institution. Defendant's attorneys confirmed the agreement and told the trial court they had discussed it with defendant and that he was in agreement.

¶ 4       Pursuant to Illinois Supreme Court Rule 605(c) (eff. Oct, 1, 2001), the trial court explained to defendant that he was charged with the offense of first degree murder in that he, without lawful justification, intentionally or knowingly shot and killed Helen Coronado and during the commission of that offense, he personally discharged a firearm that proximately caused her death. Defendant indicated that he understood and confirmed that he was pleading guilty to that charge. The trial court informed and explained to defendant his right to a jury trial, and defendant executed a written jury waiver.  The court further admonished defendant that he was giving up his right to confront witnesses against him, to be proven guilty beyond a reasonable doubt, and to have a trial of any kind or submit evidence on his own behalf. Defendant stated that he understood. The court then informed defendant that the offense of first degree murder was ordinarily punishable by a sentence of 20 to 60 years' imprisonment, but because he was charged with personally discharging a firearm that proximately caused death, the

law required an additional sentence of 25 years up to a term of natural life. Defendant indicated that he understood. The court added that defendant was not eligible for any good time credit, he could be fined up to $25,000, and at the conclusion of his sentence he would be subject to a three-year period of mandatory supervised release.  Defendant informed the court he understood.

¶ 5     The trial court then addressed defendant as follows:

"THE COURT: Other than the promise by the State's Attorney's office that they would recommend a sentence of 53 years, that is to say 28 years plus 25 years correct [?]

[ASSISTANT STATE'S ATTORNEY]: Yes.

THE COURT: -- has any promise been made to you to get you to plead guilty?

DEFENDANT: No, sir.

THE COURT: Has anyone forced or threatened you in any manner to get you to plead guilty?

DEFENDANT: No, sir.

THE COURT: Are you pleading guilty of your own free will?

DEFENDANT: Yes."

¶ 6     The State presented a factual basis for defendant's plea. In short, on October 7, 2006, defendant, who was a member of a street gang, was attacked and struck repeatedly by several members of a rival gang.  Later that day, defendant, his brother David Colin, Fernando Ojeda, and a fourth man obtained a gun and drove a van to a rival gang's "territory." There, defendant exited the van and fired two to three times at Brandon Pacera, who he believed was a member of

the rival gang. Defendant and the group then got back into the van and fled. After being apprehended and given *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), defendant told the police that he fired the gun with the intention of shooting the rival gang member. Helen Coronado, a bystander, died as a result of a single gunshot wound to her right temple.

¶ 7     The trial court found that defendant understood the nature of the charges against him and the possible penalties under the law, that the plea was given freely and voluntarily, and that a factual basis existed for the plea. The court stated that it accepted the plea and found defendant guilty of first degree murder. Defendant waived his right to a presentence investigation report and the matter proceeded to sentencing. The prosecutor informed the court that defendant had no criminal background. Defendant expressed his remorse to the victim's family, stating, "I wish to apologize to the whole Coronado family. I am deeply sorry." The trial court sentenced defendant to 53 years in prison. When the trial court admonished defendant regarding his right to appeal, defendant indicated that he understood.

¶ 8     On May 17, 2010, defendant mailed to the circuit court a *pro se* motion to withdraw his guilty plea. In the motion, defendant alleged that his trial counsel coerced him to plead guilty by stating that "the case could not be won and that the defendant would automatically face a life sentence without the possibility of parole." Defendant also alleged that counsel "stated to defendant that he was not ready for trial and did not believe he could successfully argue the case with all the overwhelming evidence against defendant."

¶ 9     The trial court appointed counsel and a hearing was held on defendant's motion to withdraw his guilty plea. Appointed counsel filed a Rule 604(d) statement indicating there were

no new grounds on which to base defendant's motion to withdraw his guilty plea. Ill. S. Ct. R. 604(d) (eff. July 1, 2006).

¶ 10    At the hearing, defendant testified that on April 19, 2010, he was represented by two attorneys for jury selection in his first degree murder trial. The next day, he returned to court for his trial to begin. One of the attorneys came to talk to him in the bullpen in the back of the courtroom; no one else was present. Defendant testified that he "said that my case couldn't be won and he couldn't successfully argue the case, and that a 53 [year] plea agreement was my only option." Defendant stated that he had not previously expressed a desire to his attorneys to plead guilty and that he had told them he wanted to have a jury trial. After speaking with one of the attorneys, defendant felt that he had no options other than to accept the 53-year plea agreement. Defendant testified that after he spoke with one of his attorneys, he also spoke with the other in the bullpen at the back of the courtroom. Again, no one else was present for the conversation. Defendant stated that the second attorney "expressed that basically the same thing, that my case couldn't be won and to take the 53 is my best choice." Defendant denied telling the attorney that he was willing to take the maximum sentence if it would save his brother time on his case, denied that his brother was within earshot when he spoke with the attorneys, and denied that his brother was voicing opinions on whether he should "take the deal."

¶ 11    The first attorney was called by the State and testified that on the date the guilty plea was entered, he was ready to go to trial. He never told defendant that he was not prepared for trial or that the case could not be won. On the day in question, he went into the lockup to talk with defendant about what to expect procedurally and "I was maybe a sentence and a half into my explanation when he stopped me, and at that time he told me he wanted to take in his words the

maximum sentence if he could get years off of his brother and third codefendant's case or to get those cases removed entirely." Other men in the lockup, including defendant's brother, were present during the conversation and they interjected with opinions and advice for defendant. The attorney recalled that defendant's brother "didn't want him to take it." Thereafter defendant's attorney spoke with the other defense attorney, the prosecutors, and the codefendants' attorneys. As a result of those conversations, the State reduced its prior offer of 55 years to 53 years and "some quantity of years were taken off the codefendant's case." He did not remember exactly what terms the State offered defendant's brother, but recalled that defendant was satisfied with the offer to his brother and that the offer was one of the "operative facts" defendant used in making the decision to plead guilty. Counsel denied telling defendant that he should take the State's offer of 53 years in prison.

¶ 12    Defendant's other counsel testified that on the day of jury selection, she was ready for trial and communicated this to defendant. At that time, she was aware that the State had offered a plea bargain of 55 years' imprisonment. On the day trial was to begin, she learned "certain information" from co-counsel. She then spoke with defendant, who told her he would be willing to plead guilty and "take all the weight," including a life sentence, if the charges against his brother and codefendant Ojeda could be dropped. After subsequent conversations with the State, an offer of 53 years was communicated to defendant. In addition, the offer included dropping the other pending charges and cases. She testified that it "was crucial for [defendant] to plead guilty if he could get his brother help his brother," and in fact, the State did reduce its offer to defendant's brother from 33 years to 23 years in prison. She further testified that she never told defendant his case could not be won and he had to take the guilty plea offer.

¶ 13    At the conclusion of the hearing, defense counsel argued that defendant's plea was not voluntary because he felt compelled to plead guilty due to his attorneys' representation to him that his case could not be won. Counsel also argued that the full terms of the plea agreement, in particular the reduction in defendant's brother's sentence, should have been made part of the record at the time defendant pleaded guilty. The State, relying on the testimony of defendant's two attorneys that represented him at his plea, argued that defendant's plea was voluntary. The State also argued that defendant's argument regarding the non-disclosure of Gio's deal was waived because it was not raised in the motion to withdraw the plea.

¶ 14    The trial court denied defendant's motion to withdraw his guilty plea. In the course of doing so, the court stated that it found defendant's trial counsel credible and the court did not believe defendant's testimony that they told him they were not ready for trial or that they could not win the case, and that he had to plead guilty. The court noted defendant's argument regarding his brother should have been of record, but found it insufficient to vacate, stating as follows:

> "It is clear to me that the representations concerning the representations made to [defendant] concerning what the State would do or what the State would offer with regard to [defendant's brother] were part of this plea agreement.
>
> Consequently, the fact that they are not specifically made or considered part of the 'promises' [defendant] was asked about in the plea hearing is not to my mind deficient as regards my responsibility to make sure that the plea hearing is conducted in accordance with the law and Rule 402, nor does it lead to the conclusion that [defendant's] plea was in any way involuntary."

¶ 15    Defendant now appeals and contends that the prosecutor and defense counsel failed to fully inform the trial court of the terms of the plea agreement, in particular, the reduction in his brother's sentence, and that therefore, the trial court was unable to confirm the terms of the agreement, determine the voluntariness of the plea, and properly exercise its discretion in deciding whether to accept the plea. Defendant argues that it was vital for the court to know about the agreement to reduce his brother's sentence in order for it to determine whether his decision to plead guilty was voluntary, or whether it was the result of pressure being placed on him either from his family or from his gang. As relief, defendant seeks reversal of the denial of his motion to withdraw his plea and remand for proper proceedings pursuant to Rule 402(b).

¶ 16    As an initial matter, we address the State's argument that the issue regarding disclosure of the reduction in defendant's brother's sentence is forfeited because defendant failed to include it in his motion to withdraw the guilty plea. Illinois Supreme Court Rule 604(d) (eff. July 1, 2006) provides that "[u]pon appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived." Defendant acknowledges that he did not raise the issue in his written motion to withdraw his guilty plea, but asserts that the issue was nevertheless preserved for appellate review because the trial court ruled on the issue. In support of this argument, defendant relies upon *People v. Heider*, 231 Ill. 2d 1, 18 (2008). In *Heider*, our supreme court declined to apply the forfeiture rule where the trial court had the full opportunity to review the defendant's claim of error, and where the defendant did not assert on appeal a completely different objection from the one he raised before the trial court. *Heider*, 231 Ill. 2d at 18.

¶ 17 Here, at the hearing on defendant's motion to withdraw his guilty plea, one of defendant's attorneys testified that the reduction in defendant's brother's sentence was one of the "operative facts" defendant used in making the decision to plead guilty, and his other attorney testified that it "was crucial for [defendant] to plead guilty if he could get his brother help his brother." At the conclusion of the hearing, defendant's attorney argued that the full terms of the plea agreement, in particular the reduction in defendant's brother's sentence, should have been made part of the record at the time defendant pleaded guilty. The trial court specifically addressed that argument in making its decision, stating that "the representations made to [defendant] concerning what the State would do or what the State would offer with regard to [defendant's brother] were part of this plea agreement" and determining that the fact that those representations did not appear of record did not mean Supreme Court Rule 402 had been violated or that defendant's plea was involuntary. In these circumstances, we find that the trial court reviewed defendant's claim and that defendant is not now asserting a completely different objection than he raised below. Accordingly, we hold that the issue is not forfeited and we will consider the merits of defendant's claims. See *Heider*, 231 Ill. 2d at 18.

¶ 18 As stated, defendant claims that the prosecutor and defense counsel failed to fully inform the trial court of the terms of the plea agreement. Specifically, defendant claims that the court was not informed of the reduction in his brother's sentence, and therefore, the trial court was unable to confirm the terms of the agreement, determine the voluntariness of the plea, and properly decide whether to accept the plea as having been voluntarily entered into.

¶ 19 In this case, before the court accepted his plea of guilty, defendant was admonished under Supreme Court Rule 402(b), which states in relevant part:

"The court shall not accept a plea of guilty without first determining that the plea is voluntary. If the tendered plea is the result of a plea agreement, the agreement shall be stated in open court. The court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement ***." Ill. S. Ct. R. 402(b) (eff. July 1, 1997).

Substantial, not strict, compliance with Rule 402(b) is required. Ill. S. Ct. R. 402(b) (eff. July 1, 1997).

¶ 20     With respect to the plea agreement, the prosecutor explained on the record in open court that in exchange for pleading guilty to one count of first degree murder and being sentenced to 53 years' imprisonment, the State would nolle pros all remaining counts against defendant, as well as the two additional cases charging defendant with possession of contraband in a penal institution. The trial court thereafter asked defendant whether, other than the promise by the State that it would recommend a sentence of 53 years, any promise had been made to him to get him to plead guilty. Defendant answered in the negative. Despite being asked by the court and given the opportunity to do so, neither the State, defense counsel, nor defendant informed the court that one of the terms of plea agreement was a promise by the State that defendant's brother would be offered a reduction in his sentence.

¶ 21     Thereafter, defendant filed a motion to withdraw his plea of guilty and vacate the judgment pursuant to Illinois Supreme Court Rule 604(d). Ill. S. Ct. R. 604(d) (eff. July 1, 2006). As grounds for his motion, defendant claimed in his *pro se* motion to vacate that defense counsel was ineffective and that he coerced defendant's guilty plea when he told defendant that he was not ready for trial, could not win the case with the overwhelming evidence against defendant and

that defendant would face a life sentence without parole. New defense counsel was appointed on the motion to vacate the plea. New defense counsel filed a certificate stating that he had consulted with defendant regarding his contention of error, examined the court file and the report of the proceedings of the guilty plea, and that because defendant's motion adequately stated his claims, defense counsel would not prepare an amendment to defendant's motion.

¶ 22    For a guilty plea to be constitutionally valid, the record must affirmatively show that the plea was made voluntarily and intelligently. *People v. St. Pierre*, 146 Ill. 2d 494, 506 (1992). This requirement is satisfied through substantial compliance with Illinois Supreme Court Rule 402(b) (eff. July 1, 1997). *People v. Wilson*, 295 Ill. App. 3d 228, 235 (1998). The decision to grant or deny a motion to withdraw a guilty plea is within the sound discretion of the trial court and is reviewed for abuse of discretion. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court. *Delvillar*, 235 Ill. 2d at 519-20.

¶ 23    Here, in the motion to vacate, defendant claimed his attorneys were not ready and they said he had no chance to win so he should take the State's reduced offer. With respect to this argument, the trial court conducted a hearing and heard evidence and found that the court was not aware of this allegation when it initially admonished defendant under Rule 402. The trial court specifically found that it did not believe defendant on this point and denied his motion as it related to that issue.

¶ 24    Next, at the hearing on the motion to vacate defense counsel presented testimony on the additional argument that defendant's plea was not voluntary because not all of the terms were

stated in open court. With respect to this second issue, defendant argued that the promise to reduce his brother's sentence should have been brought to the attention of the court initially and, had it been, there is no question the court would have addressed it in determining whether the plea was voluntary. We have little doubt this is true. However, the twist is that, at the hearing on the motion to vacate, the defendant adamantly denied that this was an element of the agreement even where the court accepted his trial counsel's statement that it absolutely was part of the inducement to plead. Thus, on the motion to vacate, the trial court found defendant's allegation that his plea was not voluntary because defense counsel was unprepared for trial and could not win was not established and that he did not show an involuntary or unknowing plea on that basis. In addition, the court found that the failure of the State, his defense counsel or defendant to inform the court of the promised reduction in sentence for his brother as a term of the agreement was an insufficient ground on which to vacate the plea because defendant denied this was part of the agreement. In any event, the issue was before the court and the plea could have been vacated if the court determined that this unstated part of the promise had any bearing on the voluntariness of the plea. After hearing all of the testimony, the court found, without stating, that there was nothing before it that would warrant his finding the plea was involuntary.

¶ 25    The failures of the prosecution and the defense to comply with Rule 402 do not provide this court with a valid reason to reverse the trial court's ruling on a motion to withdraw a guilty plea where the omission was cured by a hearing under Illinois Supreme Court Rule 604(d) (eff. July 1, 2006) to vacate or reopen the plea proceeding. The purpose of Rule 604(d) is:

> "to ensure that before a criminal appeal can be taken from a guilty plea, the trial judge
> who accepted the plea and imposed sentence be given the opportunity to hear the

allegations of improprieties that took place outside the official proceedings and *dehors* the record, but nevertheless were unwittingly given sanction in the courtroom. Rule 604(d) provides for fact finding to take place at a time when witnesses are still available and memories are fresh. [Citation.] A hearing under Rule 604(d) allows a trial court to immediately correct any improper conduct or any errors of the trial court that may have produced a guilty plea." *People v. Wilk*, 124 Ill. 2d 93, 104 (1998).

Rule 604(d) was "designed to eliminate needless trips to the appellate court and to give the trial court an opportunity to consider the alleged errors and to make a record for the appellate court to consider on review in cases where defendant's claim is disallowed." *Wilk*, 124 Ill. 2d at 106. Furthermore, Illinois Supreme Court Rule 402 (eff. July 1, 1997), Rule 604(d) (eff. July 1, 2006) and Rule 605 (eff. Oct. 1, 2001), which concern guilty pleas:

"are meant to mesh together not only to ensure that defendants' constitutional rights are protected but also to avoid abuses by defendants. *** [T]hey have been constructed to conform this State's criminal justice system to Federal constitutional standards and to avoid some of the excesses that both the State and defense counsel occasionally employ while they attempt to zealously represent their opposing interests. [Citations.] These rules are not written in a vacuum and they represent our best efforts at ordering the complex and delicate process of plea bargains and guilty pleas." *Wilk*, 124 Ill. 2d at 103-04.

¶ 26    In the instant case, the trial court took testimony on the issues that defendant claimed affected his initial plea of guilty in the hearing on the motion to vacate, including an issue that the State and his defense counsel agreed happened but the defendant denied: the promise of a

reduced sentence for his brother in return for his guilty plea. The trial court gave due consideration to each issue to determine its effect on the voluntariness of defendant's initial plea and concluded that nothing it heard allowed it to conclude that the plea was involuntary in any way. In effect, the Rule 604 hearing reopened the plea hearing and neither defendant's claims nor the matters raised by the State and his trial counsel, and denied by the defendant, convinced the court that the original plea was involuntary or coerced.

¶ 27 Moreover, there is no indication in this case that defendant was harmed or prejudiced by the parties' failure to inform the court of defendant's brother's sentence reduction at the time defendant entered his plea. When he was questioned by the trial court, defendant did not express any dissatisfaction with the plea agreement, and even now he does not complain about the bargain he received or alleged that the plea agreement was not honored. The closest defendant comes to asserting prejudice is his argument that, absent information about the reduction in his brother's sentence, the trial court was unable to determine whether his decision to plead guilty was voluntary or whether it was the result of pressure being placed on him by his family or his gang. Not only is the idea of pressure from family or gang members newly raised in this appeal, but it is contrary to testimony presented at the hearing on defendant's motion to withdraw the guilty plea. At the hearing, defendant testified that he never told his attorneys that he wished to plead guilty, he never told his defense attorney that he was willing to "take the maximum" if it would save his brother time on his case, he denied that his brother was within earshot when he talked to his attorneys about pleading guilty, and he denied that his brother voiced opinions on whether he should plead guilty. His defense attorney contradicted defendant regarding whether the brother voiced an opinion, but the attorney did testify that the brother's opinion was that

defendant should *not* accept the State's offer. In light of this testimony, we are not persuaded by defendant's argument that he might have chosen to plead guilty due to pressure exerted by his family or gang members. Reversal is not warranted under these facts. See *People v. Dudley*, 58 Ill. 2d 57, 60-61 (1974) (even though the terms of the plea agreement were not stated in open court, reversal was not appropriate because the defendant did not claim his plea was involuntary or that he suffered harm or prejudice).

¶ 28     By affirming the ruling of the trial court, we do not in any way intend to convey that we find acceptable the failure of either the State or defense counsel to fully and completely inform the court of the terms of the plea agreement. We strongly express our extreme displeasure with both the prosecutor and defense counsels for their lack of candor with the court regarding all of the terms of the plea agreement during the court's conduct of the admonishments required under Rule 402. We will not speculate on whether the omission was intentional or mere oversight. However, we remind both the State and defense counsel that one purpose of fully and completely advising the court of all the terms of a plea agreement is that it,

> "insures that the agreement will be visible for examination. This tends to insure that such plea agreements as may be entered into will be equitable and fair, considering both the interest of the defendant and the public interest in effective law enforcement. Announcing the agreement in open court will deter or at lease expose any prosecutive timidity, overreaching or other impropriety, as well as deter future unfounded claims by a defendant that an agreement entered into was not honored." *People v. Dudley*, 58 Ill. 2d 57, 60 (1974).

¶ 29     This opinion serves as a reminder to all counsel that they must fully and completely comply with their professional obligation of complete candor with the court and full compliance with Illinois Rules of Professional Conduct (Ill. R. Prof. Conduct (2010) R. 3.3 (eff. Jan. 1, 2010) entitled "Candor Toward the Tribunal" ( "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.")  We do not need to remind counsel of the immediate and long-term consequences of the failure to meet their professional responsibilities.

¶ 30                                        CONCLUSION

¶ 31     We find no abuse of discretion in the trial court's denial of defendant's motion to withdraw his guilty plea. For the reasons explained above, we affirm the judgment of the circuit court of Cook County.

¶ 32     Affirmed.